UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OAK KNOLL HEALTH CARE CENTER, ) | |
| ) | |
| Plaintiff, ) | |
| v.                             ) | Civil Action No. 1:08-CV-12051-NG |
| ) | |
| Michael Leavitt, in his official capacity ) | |
| as Secretary of The United States ) | |
| Department of Health and Human ) | |
| Services, ) | |
| ) | |
| Defendant. ) | |

**CONCISE STATEMENT OF MATERIAL FACTS OF RECORD
AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

Pursuant to Local Rule 56.1, plaintiff Oak Knoll Health Care Center ("Oak Knoll")

submits the following concise statement of undisputed facts:

1.      Oak Knoll is a replacement facility for the former skilled nursing facilities

Heritage Long Term Care Center ("Heritage") and Colonial House Nursing Home ("Colonial").

Oak Knoll is located on the same site as Heritage and Colonial on Arbetter Drive, Framingham,

Massachusetts.  (AR 176, 2889)[1]

2.      Heritage and Colonial were merged and rebuilt as Oak Knoll pursuant to a

certificate of need issued by the Commonwealth of Massachusetts Department of Public Health,

Determination of Need Program.  (AR 160-164, 2889)  On or about November 6, 1995 the new

building opened under the new name "Oak Knoll Skilled Nursing Facility."  At that time, all

thirty-five residents of Heritage were transferred to the Oak Knoll building and the old Heritage

building was closed.  (AR 640, 2890)

---

[1] "AR" refers to the Administrative Record submitted to the Court on April 10, 2009.

1

3.      Oak Knoll was managed by the same group of individuals who had managed Heritage.  (AR 644)  The former Medical Director of Heritage became Medical Director of Oak Knoll and, with minor exceptions, all of Heritage's staff moved to Oak Knoll.  (Id.)

4.      Colonial was certified for participation in the Medicaid program on May 1, 1980. (AR 168)  Heritage was certified for participation in the Medicaid program on July 1, 1981 and in the Medicare program on July 1, 1990.  (AR 2889)

5.      Heritage terminated its participation in the Medicare program on October 31, 1995 and was assigned provider number 22A287, in view of the fact that it continued to participate in the Medicaid program.  (AR 2890)  It rejoined the Medicare program as Oak Knoll on November 20, 1995 at which time is it was assigned Provider Number 22-5682.  (Id.)

6.      Oak Knoll operated a total of sixty-one beds during the cost-reporting year ended December 31, 1995.  Twenty of these beds were certified to participate in the Medicare program. (AR 2890)

7.      Prior to their merger into Oak Knoll, Colonial and Heritage were owned and operated by FRM Corporation I and FRM Corporation II respectively.  Oak Knoll is owned by Arbetter Corporation.  All of these corporations are owned and controlled by Dr. Alfred Arcidi. (AR 172-173, 2890)

8.      Both Colonial and Heritage were institutions which provided skilled nursing care prior to October 1, 1995.  (AR 176, 2889-2890)

9.      Heritage was certified for Medicare and received Medicare payments prior to October 1, 1995.  (Id.)

10.      Oak Knoll is the same institution and formerly operated as Heritage.  (AR 2889, ¶1).

11.     Oak Knoll initially requested a new provider exemption to the routine cost limits for the fiscal year ending December 31, 1995 pursuant to 42 C.F.F. §413.30(c).  (AR 39)  In February 1996, the Centers of Medicare and Medicaid ("CMS") determined that Oak Knoll was not a "new provider."  Instead, CMS determined that Oak Knoll was the same skilled nursing facility ("SNF") as Heritage which had been certified for Medicare prior to October 1, 1995.  (AR 175-177)

12.     In its decision denying Oak Knoll a new provider exemption, CMS stated:

A new provider exemption would be granted to those providers of inpatient services that have operated as the type of provider (or the equivalent) for which it is certified for Medicare, under present and/or previous ownership, for less than 3 full years.

…We look at the operation of the institution or institutional complex under "past and present ownership" exclusive of specific provider numbers, names, etc., since these are subject to change – to determine if the institution or institutional complex provided skilled nursing or rehabilitative services.

Given this context, [Oak Knoll] was recertified for Medicare participation effective, November 20, 1995.  [Oak Knoll], previously operated as two separate institutions, Heritage Long Term Healthcare Center (Heritage) and Colonial House Nursing Home (Colonial).  …Therefore, [Oak Knoll] has operated as a SNF for more than 3 years and is considered to be an equivalent provider of skilled nursing or rehabilitative services.  …The separate institutions never ceased operations during this transition to a single operating institution, nor were residents removed from the premises.

Skilled Nursing and Rehabilitative Services were provided for 3 or more years at Heritage and Colonial prior to the merger, and are now provided at [Oak Knoll].

The operations of two institutions, Heritage a 40 bed SNF/NF and Colonial a 24 bed NF, both located in Framingham, Massachusetts, underwent a merger to create a single operating institution [Oak Knoll], now Provider Number 22-5682, located at the same site as the existing Heritage institution.  Heritage was certified as a SNF/NF since July 1, 1990, decertified itself on October 13, 1995, and re-entered the Medicare program on November 6, 1995.  Colonial and Heritage had operated in the manner of a SNF by providing skilled nursing and rehabilitative services for three or more years prior to their merger into a single operating institution and subsequent Medicare re-certification on

3

November 20, 1995.

(AR 175-177)

13.     For the 1999 fiscal year, Oak Knoll timely requested transition period rate payments.  (AR 40)  Oak Knoll also requested that the transition period rate be carried forward into the subsequent two cost reporting period (the 2000 and 2001 fiscal years) in accordance with the Statute and Regulation.  (AR 3205)

14.     The Intermediary (Empire Medicare Services) denied Oak Knoll transition period reimbursement based on an interpretation of the transition period statute and regulation as stated in Section 2834A of Part 1 of the Provider Reimbursement Manual (the "Manual").  (AR 40)

15.     Section 2834A of Part I of the Manual was not promulgated by CMS after notice and comment period as set forth in the Administrator Procedure Act ("APA"), 5 U.S.C. §553(b) for formal rule making by an administrative agency.  (AR 206-208)

16.     CMS's denial of Oak Knoll's request for transition period reimbursement had the effect of reducing Oak Knoll's Medicare reimbursement.  (AR 149)

17.     Oak Knoll timely appealed CMS's denial of its request for transition period reimbursement to the Provider Reimbursement Review Board (the "Board").  (AR 40)  Oak Knoll also timely appealed CMS's denial of its request for a new provider exemption for the fiscal year ending December 31, 1995.  (AR 39)

18.     The Board consolidated the transition period reimbursement appeal with Oak Knoll's separate appeal of its denial of a new provider exemption.  The Board agreed to hear and decide the appeal on the basis of the Stipulated Facts and the record submitted to it by the parties.  (AR 37-43, 2889)

4

19.     In a decision dated August 12, 2008, a unanimous Board ruled that Oak Knoll was entitled to the transition period payment rate because it had received Medicare payments before October 1, 1995.  The Board ruled that Section 2834A of the Manual "goes beyond the clear meaning of the controlling law and attempts to add an additional criterion to restrict entitlement to a transition period payment rate by including the phrase 'under its current provider number.'" (AR 42)  The Board also ruled that Oak Knoll did not qualify as a new provider under 42 C.F.R. §413.30(e).  (AR 42-43)

20.     In a decision dated October 14, 2008, the Administrator of CMS ruled that Oak Knoll is not entitled to transition period reimbursement notwithstanding the Board's decision. (AR 10-18)

21.     Oak Knoll timely appealed the Administrator's decision.

Respectfully submitted,
Plaintiff,
OAK KNOLL HEALTH CARE CENTER

By its attorneys,

   /s/ Nicholas J. Nesgos
Nicholas J. Nesgos, BBO No. 553177
nnesgos@pbl.com
James E. Kruzer, BBO No. 670827
jkruzer@pbl.com
POSTERNAK BLANKSTEIN & LUND LLP
The Prudential Tower
800 Boylston Street
Boston, MA 02199
Dated:  August 31, 2010          (617) 973-6100

5

6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2010, I electronically filed the foregoing Memorandum in Support of Plaintiff's Motion for Summary Judgment, with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to counsel for the Defendant

<u>/s/ Nicholas J. Nesgos</u>

6