UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| OAK KNOLL HEALTH CARE CENTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:08-CV-12051-NG |
| | ) | |
| Michael Leavitt, in his official capacity as Secretary of The United States Department of Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S
MOTION TO AFFIRM THE ADMINISTRATOR'S DECISION**

In its Opposition Memorandum,[1] the Secretary concedes that "entitlement to transition period payments is to be determined by the date on which 'the SNF' received its first Medicare payment." Opposition Memorandum, p. 12. The Secretary also does not (and cannot) dispute that the relevant statute and regulation do not on their face require that an SNF retain the same Medicare provider number or agreement for any period of time in order to be eligible for transition payments. Instead, the Secretary now argues that the term "skilled nursing facility" as it appears in 42 U.S.C. §1395yy(e)(2)(ii) (the "Statute") is ambiguous, and that the determination of whether a particular provider is the same or a different SNF can and should be made by reference to whether the SNF retains the same Medicare provider number. Stated differently, the Secretary argues that it is reasonable to define an SNF by reference to its particular Medicare provider number.

---

[1] The "Opposition Memorandum" refers to defendant's Memorandum in Support of Motion to Affirm the Administrator's Decision and in Opposition to Plaintiff's Summary Judgment Motion.

1

The Secretary's argument is at odds with and foreclosed by the statutory definition of an SNF.  An SNF is defined under 42 U.S.C. §1395i-3(a) as an "institution," or a distinct part of an institution, that is primarily engaged in providing to residents skilled nursing care or rehabilitation services.  The statutory definition of an SNF does *not* even require that the institution have a Medicare provider agreement or receive Medicare payments.  Instead, the definition focuses on the functional characteristics of the institution and the type of services it provides.  Id.  A Medicare provider number is not a defining characteristic.

Oak Knoll is entitled to transition rate reimbursement so long as it is an SNF that received its first payment from Medicare, under present or previous ownership, on or before October 1, 1995.[2]  It is undisputed in this case that Heritage Long Term Health Care Center Inc. ("Heritage") was an SNF which received Medicare payments prior to October 1, 1995.  (A 2889)  The Secretary further has admitted that Oak Knoll is the *same* institution as Heritage.  Paragraph l of the Stipulation of the Parties in this case provides as follows:  "The petitioner … Oak Knoll formerly operated as the Heritage Long Term Health Care Inc., a licensed nursing home.  …."  (Id.)  Further, in its decision denying Oak Knoll a new provider exemption the Centers of Medicare and Medicaid ("CMS"), determined that Oak Knoll was the same institution as Heritage and that, as of November 20, 1995, Oak Knoll had been operating as an SNF for more than 3 years.  (AR 175-177)

---

[2] 42 U.S.C. §1395yy(e)(2)(E); 42 C.F.R. 413.340(e).

2

In its new provider exemption decision, CMS explained the analysis that led to this conclusion:

> We look at the operation of the institution or institutional complex under "past and present ownership" exclusive of specific provider numbers, names, etc., since these are subject to change – determine if the institution or institutional complex provided skilled nursing or rehabilitative services.  (A 175)

The decision of CMS was upheld by the Provider Reimbursement Review Board and accepted by the Secretary.  The Secretary is bound by her determination that Oak Knoll is the same SNF as Heritage.  Principles of judicial estoppel preclude her from contending otherwise.  See Jhore v. Howe, 466 F.3d 173, 181-183 (lst Cir. 2006).

Finally, the cases relied upon by the Secretary do not support her position.  In South Shore Hosp., Inc. v. Thompson, 308 F.3d 91 (lst Cir. 2002), the First Circuit held that a hospital was not eligible for a new provider exemption where it had purchased Determination of Need (DON) rights from an unaffiliated nursing home which had been in operation for more than three years.  The focus of the First Circuit's decision in Thompson was whether the transfer of DON rights was a sufficient basis for imputation of previous ownership under 42 CFR §413.30(e)(2).  In determining that the hospital was not entitled to a new provider exemption, the Secretary (and the First Circuit) looked at the "operational history" of the entities and determined that the prior holder of the DON had functioned as the equivalent of an SNF during the previous three years.  Id., 99.  The Court held that it was reasonable for purposes of construing the new provider exemption to attribute the operations of the seller to the acquirer of the DON rights.  Id., 102.  Similarly, in Paragon Health Network v. Thompson, 251 F.3d 1141 (7th Cir. 2001), the Court held that the Secretary acted reasonably when it denied a new provider exemption to an SNF which had acquired Certificate of Need (CON)

rights from a predecessor SNF that had operated for more than three years.  Neither case

supports or addresses the Secretary's position in this case that an SNF that first received a

Medicare payment before October 1, 1995 can be denied transition rate reimbursement based

upon a change in its Medicare provider number.

<div style="margin-left:50%;">

Respectfully submitted,
Plaintiff,
OAK KNOLL HEALTH CARE CENTER
By its attorneys,

  /s/ Nicholas J. Nesgos
Nicholas J. Nesgos, BBO No. 553177
nnesgos@pbl.com
James E. Kruzer, BBO No. 670827
jkruzer@pbl.com
POSTERNAK BLANKSTEIN & LUND LLP
The Prudential Tower
800 Boylston Street
Boston, MA 02199
</div>

Dated:  December 10, 2010      (617) 973-6100

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2010, I electronically filed the foregoing Reply Memorandum, with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to counsel for the Defendant.

/s/ Nicholas J. Nesgos

4

1204370v1/7397-12